IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| vs. | ) Criminal No. 18-152 |
| | ) ELECTRONICALLY FILED |
| JAIMON WOODS, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER DENYING DEFENDANT'S MOTION TO REDUCE
SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 1677)**

Pending is Defendant's counseled Motion for Reduce Sentence Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (ECF 1677), and the Government's Response in Opposition to the Motion (contending that Defendant failed to prove extraordinary and compelling reasons to warrant such a release).[1] ECF 1685. For the following reasons, Defendant's Motion will be DENIED.

*I.    Factual and Procedural History*

Defendant, Jaimon Woods, pled guilty to one count of a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g). ECF 806. At the time Defendant changed his plea, he entered into a plea agreement with the Government wherein, pursuant to Rule 11(c)(1)(C), Defendant and the Government stipulated and agreed that the appropriate sentence in this case would be a term of imprisonment of 70 months, a term of supervised release of three years, and a special assessment of $100. ECF 804-1. This Court accepted his guilty plea and approved the plea agreement on December 5, 2019. ECF 804. On March 11, 2021, Defendant

---

[1] Defendant originally filed a *pro se* motion (ECF 1623) which this Court will deny as moot, in light of the fact that he was represented by accomplished and respected federal criminal counsel, who subsequently filed a motion on Defendant's behalf.

was sentenced to the agreed-upon term of 70 months imprisonment, three years of supervised release, and Defendant was ordered to pay a $100 special assessment.  ECF 1382 and ECF 1384.

The facts of this case are as follows:

In 2017, the Federal Bureau of Investigation and the Drug Enforcement Administration initiated a wiretap investigation, primarily targeting the GBK street gang and drug trafficking in and around an area known as the Greenway Projects, located in the West End of Pittsburgh. ECF 1024.  Defendant, Jaimon Woods, was an original target of this investigation.  *Id.*

On November 17, 2017, an FBI Task Force Officer conducting surveillance in connection with the investigation observed Jaimon Woods driving a gold BMW, and on December 7, 2017, an officer with the Avalon Borough Police Department conducted a routine traffic stop of the same gold BMW in Avalon Borough, Allegheny County, PA.  *Id.* When the Avalon police officer attempted to conduct the traffic stop, Defendant and the passenger of the vehicle exited the vehicle and began walking away.  *Id.*  The officer commanded both to stop and get back into the vehicle, but Defendant continued to ignore commands to stop.  *Id.*  (The passenger of the vehicle fled and was not apprehended.)  *Id.*  The police officer caught up with Defendant and took him into custody.  *Id.*  While placing Defendant under arrest, the officer detected a strong odor of fresh marijuana emanating from Defendant, and during a pat-down of the defendant's person, he recovered a quantity of marijuana and $750 cash from his front left pocket.  *Id.*

After placing Defendant under arrest, the officer conducted a search of the vehicle and discovered a black jacket lying on the driver's side front seat where Defendant had been sitting. *Id.*  The officer immediately noticed the handle of a black semi-automatic firearm protruding from the jacket. The officer recovered a Smith and Wesson M&P, 9 millimeter pistol, serial

number HLA0108. The firearm was loaded and was confirmed to be stolen. *Id.* During a further search of the car, the officer also recovered a Smith & Wesson, 44 magnum revolver, serial number BBC8960, from under the front passenger's seat. *Id.* That firearm was also loaded and was also later confirmed to be stolen. *Id.*

## II.     Standard of Review

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization." *McMillan v. U.S.*, 257 F. App'x 477, 479 (3d Cir. 2007); *see also Dillon v. U.S.*, 560 U.S. 817, 819 (2010) (stating, "[a] federal court generally may not modify a term of imprisonment once it has been imposed."). One such specific authorization is the First Step Act's amendment of 18 U.S.C. § 3582, which provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i)     extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]
18 U.S.C. § 3582(c)(1)(A).

As explained by the United States Court of Appeals for the Third Circuit in *United States v. Badini*, 839 Fed. App'x 678 (3d Cir. Mar. 11, 2021):

The compassionate-release provision states that a district court "may reduce the term of imprisonment" and "impose a term of probation or supervised release" if it finds that "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Before granting compassionate release, a district court must consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A). Those factors include, among other things, "the nature and circumstances of the offense and the history and characteristics of the defendant," *id.* § 3553(a)(1), and the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to criminal conduct"; and "to protect the public from further crimes of the defendant," *id.* § 3553(a)(2)(A)–(C).

*Badini,* 839 Fed App'x. at 678-79.

In determining what should be considered an "extraordinary and compelling reason" for sentence reduction under Section 3582, the United States Sentencing Commission has defined the contours of the test, in relevant part, as follows:

> 1. Extraordinary and Compelling Reasons. -- Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.
> . . .
> (ii) The defendant is
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13, cmt. n.1.  Notably, the Court of Appeals for the Third Circuit recently held that: "The policy statement's descriptions of extraordinary and compelling circumstances can 'guide discretion without being conclusive'." *U.S. v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021) (quoting *U.S. v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020).

It is the defendant who bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A).

4

*U.S. v. Grasha*, Crim. No. 18-325, 2020 WL 5647829, at *2 (W.D. Pa. Sept. 24, 2020) (citations omitted).

Finally, there is an administrative exhaustion requirement that must be met before a defendant may file a Section 3582(c)(1)(A) motion with the Court.  As explained by the Court of Appeals for the Third Circuit in *U.S. v. Harris,* 812 Fed. App'x. 106 (3d Cir. 2020), Section 3582(c)(1)(A) "states that the defendant may file the motion [for compassionate release pursuant to Section 3582(c)(1)(A)] thirty days after the warden receives his request."  *Harris,* 812 Fed. App'x. at 107.

The First Step Act's amendment of 18 U.S.C. § 3582 ("Section 3582") provides in relevant part:

> The court may not modify a term of imprisonment once it has been imposed except that—
> (2) in any case—
>
> (B) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>   (i) extraordinary and compelling reasons warrant such a reduction; . . .
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A).

The defendant bears the burden of proof, by a preponderance of the evidence, with respect to a motion for compassionate release brought pursuant to Section 3582(c)(1)(A)(i). *U.S. v. Grasha*, Crim. No. 18-325, 2020 WL 5747829, at *2 (W.D. Pa. Sept. 24, 2020) (citations

omitted).

### III.   Discussion

As a preliminary matter, the Court notes that Defendant did exhaust his administrative remedies and waited 30 days from the day he received the warden's denial of his request for compassionate release before filing his petition with this Court.  Therefore, the Court will consider the merits of Defendant's request for compassionate release to determine if extraordinary and compelling circumstances are present in this case warranting such a release.

Defendant, who bears the burden of proving extraordinary and compelling reasons to warrant his release, has been incarcerated since November 17, 2017.  ECF 1677. Defendant, who bears the burden of proving extraordinary and compelling reasons to warrant his release, contends that he is entitled to release – and he specifically is seeking release to a time-served sentence or to home detention for the balance of his sentence – because of his mental health issues and the "restrictive condition confinement" at the FCI Schuylkill.

Importantly, Defendant, a 31-year-old, admits that he has no underlying physical health conditions, but claims he suffers from PTSD, anxiety, and severe depression.  He argues that these mental health factors and the restrictive conditions which are in place at FCI Schuylkill, due to COVID-19 global pandemic, place him at great risk to contract COIVD-19 again.

In response, the Government notes that Defendant, while incarcerated, was offered the COVID-19 vaccine, but he refused the vaccine.  ECF 1685.  The medical records supplied by Defendant's counsel support this fact.  See ECF 1684, filed under seal.  The Government further counters that even if Defendant had not refused the COVID-19 vaccine, he failed to demonstrate extraordinary and compelling reason warranting his early release.  *Id.*

The United States Court of Appeals for the Third Circuit has determined that even when evidence exists that COVID-19 may spread from the community into a prison population, this alone cannot justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("We do not mean to minimize the risks that COVID-19 poses in the federal prison system . . . [b]ut the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."); *see also, United States v. Roeder*, 807 F. App'x 157, 161 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of [COVID-19] does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

The Court begins its analysis by noting that at the time Defendant submitted his request, FCI Schuylkill was, in fact, at a "Level 2" (in terms of its operations) due to COVID-19 and thus, there were more restrictions placed on inmates. ECF 1677. However, since the filing of his motion the facility has resumed operating at a "Level 1," which means the restrictions due to the virus have been reduced. ECF 1685. The Government's Response also notes that the vaccination rate at the facility is greater than or equal to 65%, and as of April 17, 2022, the community transmission rate was less than 50 per 100,000. *Id.*

Moreover, the Court's review of Defendant's medical records (filed under seal at ECF 1684), does not show any evidence of Defendant's alleged prior COVID-19 infection. Even though it is possible that Defendant tested positive for the virus at some point in time, there is nothing in his medical record to indicate that he suffered from a previous infection, nor that he is more likely to contract it again based on either his alleged prior exposure and/or his mental

7

health concerns. In addition, the Court's review of Defendant's medical records does not indicate how he was adversely impacted (from a mental health standpoint) with respect to the Level 2 restrictions at FCI Schuylkill. Although the Court does not dispute that Defendant suffers from the myriad of mental health conditions he referenced, there is no evidence to support a claim that the conditions at the correctional facility where Defendant is housed are impacting those conditions in such a way so as to create an extraordinary and compelling reason for his release.

Accordingly, Defendant's concerns that he may be greater risk for (re-) contracting the virus and any other concerns he may have with regard to the impact the prison system as modified by COVID-19 restrictions present to his mental health are not enough to warrant release from FCI Schuylkill. Simply stated, Defendant has failed to demonstrate that extraordinary and compelling circumstances exist in light of the law established by the Court of Appeals for the Third Circuit governing this issue.

IV.     Conclusion

Based on the foregoing law and authority, this Court hereby DENIES Defendant's Motion for Sentence Reduction Under 18 U.S.C. 3582(c)(1)(A), ECF 1677.

SO ORDERED this 12th day of May, 2022

s/Arthur J. Schwab
United States District Judge

cc:     All counsel of record